Good morning, Your Honors, and may it please the Court, my name is Kirk Jenkins and I represent the appellant, Westchester Fire Insurance Company, and with the Court's permission I've reserved five minutes for rebuttal. Your Honors, the judgment here should be reversed for three reasons, and I'll outline them quickly and then come back to them in slightly more detail. Number one, there is absolutely no basis for believing that the Minnesota Supreme Court would apply the compulsory insurance doctrine here to a Clark County, Nevada, ordinance which has none of the characteristics that are found in these compulsory insurance statutes around the country. Number two, the universally agreed on prerequisites for applying the doctrine, the first one is simply not here, and that's not a dispute of fact, Northwest conceded that below and has conceded it once again in front of this Court. And number three, the ordinance simply doesn't apply to the insured here. Now, I think this case has to be viewed through the prism of the standard because this is a diversity case, and what that means is that it is not the function, this Court has said, of a federal district court sitting in diversity to expand state laws in ways that are not foreshadowed by precedent. While Minnesota law governs here, there is one published case that either side has found out of Minnesota law, it's the Nymeth case and it's forty-five years old. So that's, I think, the prism that the Court should approach this case through. Let me ask you, I thought it was kind of curious here, we're interpreting a Nevada law, a county ordinance, as a matter of public policy, we're interpreting Minnesota law applying a Nevada ordinance. That's correct, Your Honor. So as a matter of public policy, would Minnesota Supreme Court even care so much about applying the Nevada ordinance and making it controlling? Your Honor, I think that's a fair point that the Minnesota Supreme Court would feel like Minnesota has, as the expression goes, very little of a dog in this fight, one way or the other. The reason that the Court below applied Minnesota law, and in fact both sides argued for the application of Nevada law, but what the district court ultimately said is, well, as best I can tell, there's no difference between Minnesota law and Nevada law on this subject. So we apply the default rule of the 8th Circuit. Well, my point is, there may be public policy interests here that differ, I mean, Nevada may be very much interested in supporting its ordinance and where Minnesota may not care at all. I suspect Nevada would be more interested in supporting its ordinance, but I think the analysis, Your Honor, is the distinction in what the public interest is that's reflected by this ordinance. What we find when we consult the cases around the country that have applied this compulsory insurance doctrine is these statutes are adopted to promote public health and welfare, and the paradigmatic instance is we're talking about members of the general public who are no prior relationship with the stranger, and as such, they have no way of knowing who the relevant insurer is, they have no way of giving notice themselves to the insurer, no way of compelling that individual to comply with the terms of their policy here. Well, what we find when we look at the legislative history of this ordinance is it's obvious that Clark County, Nevada adopted this ordinance in order to protect itself from premises liability suits. That's what actually was going on here, and more importantly, the facts that we have here are very different from that paradigmatic situation of a member of the public being harmed by a total stranger. Northwest was injured by a business partner, a company that they had a contract with and had had a contract with for several years, continued to work with for several years after the incident. They had already negotiated the terms of allocation of risk. Northwest agreed to carry certain kinds of insurance, Powell agreed to carry other kinds of insurance. Northwest's involvement with Powell's, which is the name of the insurer, was in no way fortuitous in the way that a member of the general public harmed on the highways, or a customer that happens to walk into a propane dealer, and that's the Fisher Roundtree case that we talk about, in the way that that's fortuitous. So that's the first distinction between these cases. The second distinction is that these cases tend to be aimed at a broad class of actors interacting with the general public, motorists on the highway, taxi drivers, truck drivers, people offering storage services, the Brad Movers case out of Illinois, the Fisher Roundtree case that I just alluded to. You wanted to go into business offering liquid propane to the general public, well we're going to impose this on you. That's not what we have here. We actually have a subset of a subset here. This ordinance is directed not just at permittees at McCarran Airport in Las Vegas, it's directed only at the permittees who don't have a prior agreement with Clark County about what insurance they're going to cover. So that's another distinction with all of the laws that have applied this doctrine. And finally, what we see in these ordinances and statutes in which the doctrine has properly been applied, is that they have very detailed requirements of what the insurance is supposed to say, and typically they also say, and there's these additional requirements that are read automatically into the policy, whether they're actually there or not. And the Nevada Motor Vehicle Statute is an interesting comparison, because it has six different kinds of information that it says has to be stated in the policy. And additional ones that, as I say, it says they're in the policy whether they're literally written there or not. Well, when we look at this ordinance from Clark County, it says two things, the type of coverage and the limit. And in fact, according to the district court, apparently they weren't very serious about the limit, because PALS, the district court said PALS got this insurance because of the ordinance. Well they conspicuously certainly did not have $150 million in CGL coverage, which is what the ordinance actually says. So apparently at the end of the day, the only thing that matters about this ordinance is the types of coverage. So that's the other distinction. Viewing this in the context, through the prism, again, of that motorist on the highway or that retail customer who just happens to walk into the business to buy a tank of propane. Public policy is very different here. That individual has no way of protecting its interests before the encounter with that dealer. Northwest not only did have that ability, they did in fact negotiate that contract. Second, that individual has no way of compelling cooperation with the investigation of the insurer. We asked in our brief, why didn't Northwest simply send PALS a letter and say, you know what, you're going to prove to us that you've notified your insurer and that you're actively cooperating with the investigation, or 30 days from today, we're done. The contract is terminated. They didn't do that. It's not a question of whether they had an obligation to do that. It's another instance in which this situation is very different from what any jurisdiction has ever applied this doctrine to. Third, they either knew or should have known who the insurer was. They had a right to an insurance certificate. And fourth, they could have given notice at any time. The point isn't that they had an obligation to, they didn't. But again, it's another distinction between them and that motorist on the highway or that person who walks into a dealer to rent a storage space. Our second point briefly, Your Honor, every court that we've been able to find, we find no contrary authority on this issue, says that the first prerequisite for this doctrine to apply is the policy has to be obtained in order to comply with the statute. Now, Northwest says, well, the subjective intent of PALS, how can we possibly know? It doesn't really matter. We're not talking about subjective intent here, Your Honor. We're talking about a question of law. These people had a preexisting contractual obligation to get this hangar keeper's insurance. That's admitted in the supplemental complaint, and Northwest has conceded it again up here Well, under the law cited by the district court, the law of royal indemnity, which is really the wellspring of this entire area of precedent, and the law as stated in Nymath. Nymath is one of the cases that the district court cited. That's a requirement. That's the reason why the policy has to be obtained. It's not true here. Your Honor, that one admission is enough to reverse here. And the final point I wanted to raise before sitting down is that the ordinance applies to, as I said, a subset of a subset, permittees who don't have a preexisting contract with the county. Here, PALS absolutely had such a contract, the temporary operating permit, which had several requirements in it for insurance. So they did have a preexisting contract with the county. So the plain language of the ordinance, it wouldn't apply. Briefly, Your Honor, we've dealt in considerable detail in the reply brief with the issue of waiver. We believe we've dealt with it adequately there and hopefully disposed of it. Our three responses, as we say there, are number one, the issue. The question is, have you raised the issues, not the arguments? And we raised three issues here, not nine. We raised three. And they were the focus below, even if it were the law, which it isn't, that you slice and dice the opponent's argument into the smallest possible subsets in order to judge waiver. We demonstrate in our reply brief that we've preserved everything. And finally, two of our three arguments, the first one and the third one, as I outlined them, are pure questions of law. So there's no waiver possible there to begin with. The second one is based on uncontested facts. And even Northwest admits that. They say at pages 9 and 13 of their brief, well, on the uncontested facts, we win. Well, if the facts are undisputed, Your Honor, there can be no waiver. So that question we've dealt with. And unless the court has questions, I'll reserve the balance of my time for rebuttal. OK. Thank you, Your Honor. Thank you, Mr. Jenkins. Mr. Zabel. Good morning. Good morning, Your Honor. May it please the court, both sides concede that the compulsory insurance doctrine represents valid and controlling law in this litigation. The compulsory insurance doctrine is both very simple and very fair. It is simple in that all it stands for is that if a lawmaking body makes a law telling one group of people that they have to have insurance in place for another group of people, then if one of the persons in the protected group of people is injured in an accident or by an accident, then the post-accident misconduct of the policy holder can't frustrate the will of the legislature. Any post-accident misconduct, such as failure of notice and failure in cooperation in this case. The policy is there for the protection of the insured. It's also fair that the insurance company is being asked to cover precisely the risk it agreed to cover and received a premium to cover, and the injured party isn't left out in the cold by being first injured by somebody and then being injured again by having this person abscond or not comply with the post-accident conditions of the policy, thus leaving the protected person out in the cold. Now the compulsory insurance law in this case is a Clark County ordinance that required PALS, a vendor permittee at the airport, to have insurance in place, hangar keeper's insurance, to cover non-owned property in PALS care. Hangar keeper's insurance is a very specialized insurance that is designed to protect against physical damage to aircraft, and they were also told that they had to have at least $5 million worth of this specialized insurance. The compulsory insurance policy in this issue is, not coincidentally, a $5 million hangar keeper's policy purchased by PALS from Westchester Insurance that promised to pay for damages to non-owned aircraft serviced by PALS. The injury at issue is precisely the type of injury addressed both by the law and by the policy was physical injury to one of Northwest's aircraft caused by the negligence of PALS. Westchester's sole grounds for denying coverage is the post-accident misconduct of the insured. They don't dispute that this is precisely the type of insurance and protection they were paid to provide. In other words, this is a classic instance where the compulsory insurance doctrine should be applied. The district court held that in order for the doctrine to apply, the insurance coverage at issue must be purchased in order to comply with the law and that the injured party should be among those people in the class protected by the law. Here you had a law saying you must buy $5 million in hangar keeper's coverage. You have a $5 million hangar keeper's policy. You have a law that says it must cover non-owned property in your care, aircraft is what hangar keeper's policy deals with. It's clear that Northwest, as a user of the airport, is one of the class of people meant to be protected by this law. What about Mr. Jenkins' distinctions in particular that seems like most of these other laws are to protect persons. Bodily injury, not so much premises liability or property damage. Most of the laws are, I think, that's because the most prevalent type of compulsory insurance right now is automobile insurance. But the district court also pointed out that it goes beyond that. And in this case, I think the key issue is no matter who you are and no matter how big a class of people you are, if a law making body says, I want to protect you. And I'm going to require that somebody have insurance in place to protect you. It shouldn't matter whether it's property or bodily damage or whether it's 100 people or 100,000 people. What do you think about my question about Minnesota's Supreme Court's public policy or we're looking at here, trying to interpret what the Minnesota Supreme Court would do in really looking at what a Nevada state courts would do. Do you think that the Minnesota Supreme Court, which may carved out a very narrow exception, would expand it to an ordinance of another state that essentially premises liability? I think that both sides agree that Nevada law controls, but the district court held that- But you understand, it'd be different if it were a Minnesota airport versus a Nevada airport. Certainly, the Minnesota Supreme Court would want to protect its residents and its businesses and so forth. But here, we have a Nevada court and we're trying to guess, well, how would Nevada deal with this? And the court held that there's no distinction between Minnesota and Nevada law. And the Nymath case is very broad. It basically adopts in its entirety the compulsory insurance doctrine in a sentence separate from, or excuse me, a paragraph separate from its discussion of the Minnesota Motorist Statute. It says that if there is a compulsory insurance policy in place, then the post misconduct conduct of the policyholder can't deprive the injured protected party of his or her- Well, but the Minnesota Supreme Court made some very general statements, but it also made some very specific statements that they were dealing with a statute that was much more expressed about protecting somebody where this is a very general ordinance. And Minnesota Supreme Court was saying, this is an exception and we're going to make it. And then they made some general statements, but they went in and they looked at the statutes specifically and said, reading the plain language of the statute, and said, the legislature meant there'd be coverage here for the benefit of the injured. Here, we have a much more general ordinance. And my question then is, do you think Minnesota Supreme Court would continue to broaden their exception to an ordinance that doesn't have any of the language that was in, I can't even remember the name of the case, the name of the case that the Minnesota Supreme Court made this. Do you think it would extend it that far? I believe so, Your Honor. And why? What do you base that on? It's a fundamentally fair doctrine. When a lawmaking body says, you shall have insurance in place to protect this group of people, that is an expression of will. I know, and there's general language in the Minnesota Supreme Court decision. But then it goes very, it analyzes it very specifically to the statute, which had strong language that they were trying to protect the injured party. We don't have that here in this ordinance. You don't have the same identical language, but you do have the same identical expression of the will of the lawmaking body is that Party A shall buy insurance protection for the protection of Party B. It shall be for the benefit of Party B. And therefore, on issues of fundamental fairness and the direct thwarting of the will of the lawmaking body, the injured party shouldn't be the one left out in the cold when the insurance policy is mandated. Here's an example, and it's Nimmoth, which you're familiar with. But the Minnesota Supreme Court says that this section makes it clear that the liability insurer becomes absolute when a damage or injury occurs and no violation of policy, quote, shall defeat or void such policy. We don't have anything like that in this ordinance. That's correct, Your Honor, but you still have the expression of the will of the Clark County that the insurance shall be there to cover, shall be for the benefit of the injured party. It is simply an extension of the benefit. Yes, the Minnesota statute, the Minnesota Motor Vehicle Statute is different from the Nevada statute, but the principles are the same. The principles are that if you tell a group of people that they have to have insurance in place and the purpose of that insurance is to cover somebody, another group of people whom you might injure, then the compulsory insurance doctrine, which has been adopted around the country beyond even automobile cases, then that injured party shouldn't be deprived of things out of their control. And I want to just address a couple things. The notice issue and the cooperation issue, Northwest couldn't force PALS to cooperate. This is a party that didn't respond to a lawsuit, didn't respond to a federal subpoena, short of putting a gun to his head and frog-marching him to the nearest Westchester office, we couldn't force him to do anything. The undisputed evidence is that Northwest didn't learn. They say we should have learned, but we didn't learn of the existence of the Westchester policy for over a year, and shortly thereafter we gave them notice. I, in my summary judgment brief, because they made a big deal out of it, put a long section in there that said we have no obligation to give notice. We're a stranger to this insurance contract. We have no obligation to force somebody to cooperate with its insurer. And Westchester didn't respond to that. They just left that alone. I had lots of law in there. Now they're suggesting we should lose our right to coverage, even though we didn't have an obligation to do it. Also, Westchester had plenty of opportunity to respond. What was their response when they received notice? Nothing. We'll stonewall Northwest. We'll sit here. We'll make them sue us. What was their response when we sued PALS in Minnesota and said to Westchester, your insurer isn't showing up. Do you want to come and defend this thing? They stonewall us again. To the extent that you've not already covered it in your argument, how do you respond specifically to Mr. Kirk's subset of a subset argument? Again, I think that, first of all, it's a fairly large group of people. Las Vegas International Airport has lots and lots of owners of aircraft on there. But, again, I don't think that's the point. I think if a lawmaking body says I want to protect this group of people, I don't care if there's two people in that group or two million people. There's a protected group of people. It's a fairly large number of people. And to say that there's little or no public benefit to this ignores the public benefit of having a functioning and effective airport. Well, what about the argument that the Clark County ordinance was designed to protect itself from premises liability? I think that that was part of it, too. But it clearly also said that you should have it. I think that they were because it says right in the statute that you should have cover in terms of place to cover non-owned property. So I think the fact that it gives a benefit to both Northwest and to Clark County is irrelevant. A legislature gets to pass laws that benefit both the government and private individuals, and that's simply what one of these laws did. Well, then again, Mr. Kirk in his reply brief said that you're asking us to extend a rarely used concept of insurance law. And frankly, I don't think I had ever run across this compulsory insurance in the terms in which it's being presented in this case. Well, we cited an awful lot of our cases around the country. I guess maybe it is more often applied than we're aware of, or I'm aware of. And even the District of Minnesota court cited the District of Nevada saying, yeah, the purpose of compulsory insurance is to protect the injured party. It's not there for the protection of the insured. And the compulsory insurance doctrine, every single element, and the fact that they might have had a contract with Northwest to do the same thing. Look, if I make a contract with my neighbors to carpool to downtown Minneapolis and I designate in there, geez, everybody shall have this and this insurance, which is the mandatory state insurance, is somebody seriously going to argue that my contracting all of a sudden made that insurance non-compulsory? Of course not. It's compulsory because the law said it was compulsory. And that law was, well, forget about it, whether it's a Clark County ordinance or Minnesota statute. Judge Tunheim found that basically they're the same law. Well, I mean, the provisions were not in conflict and it didn't make much difference which law was applied? Well, I've lost my train of thought. Thank you. Let me ask you this. What concerns me is whether the Minnesota Supreme Court would go this far. I think this may be out near the extreme of enforcing compulsory insurance laws. And I guess, you know, we're trying to give an educated guess where the Minnesota Supreme Court would go. Do you have anything other than the Nimmuth case, or Nimmuth, whatever it is, to indicate to us, do you think that the Minnesota Supreme Court would go out to essentially the extreme? You're pretty much arguing that any compulsory insurance law, the defenses of notice and cooperation don't apply. I am arguing that if a lawmaking body says you should have insurance in place to protect that person. And any lawmaker. And I'm saying, other than the language in the Nimmuth or Nimmuth case, is there anything where the Minnesota Supreme Court has given us a clue that it would go that far? The Nimmuth case, as far as I know, going back to the 60s, is the only case dealing with this doctrine. I might be wrong, but that's the one that both parties cited to. Okay. Well, thank you, Mr. Sable. Mr. Jenkins, I think you have a little time. Yeah, about three and a half minutes. I don't think I'll take it all, Your Honor, but several very quick points. Your Honor, the assertion that my client did nothing when they learned of this situation is simply false. And I think it's important to clear that up. It's in our brief, and it's also in the record. After we learned of this situation, we actively tried for some time to get the cooperation of the insured. And even after we got official notice from northwest of the lawsuit, we did offer to our insured to attempt to assist in getting the default hopefully vacated, and there was no response to that. So a quick factual correction. How are you, you may not have argued this, but how are you prejudiced here by late notice and lack of cooperation? Well, Your Honor, there is real prejudice here, but it's important also to recall that there's a final judgment of the district court in Nevada saying that we did nothing wrong here, that in fact the notice and cooperation provisions were breached. You have every right to have those provisions. You have every right to have them enforced. But we're looking at writing them out of your insurance policy. That's what northwest is asking. But for us, I would like to know if somehow in this particular case you were prejudiced, your company was prejudiced somehow by the late notice or the lack of cooperation. Simply put, Your Honor, we were completely unable to make any investigation. By the time we realized that this situation had arisen, this airplane was fully repaired and back in the air. So there was no realistic investigation possible by the time we learned of this case. It's also important to note that the district court in Nevada said that in deciding that we'd done nothing wrong, that we had every right, said assuring a prejudice wasn't actually necessary. But I think it was certainly true here. Your Honor, northwest argues that if a statute makes insurance compulsory, that's the end of the story. The compulsory insurance doctrine applies. To my knowledge, there's not a single case anywhere from any jurisdiction that holds it that broadly. Well, there's broad language in the Minnesota NIMA case. But they've never seen fit to extend that anywhere, Your Honor. So it's not merely a jump. It's a chasm from NIMA to this case. Well, if you ignore their later review of the specific language, their general statement would apply to any compulsory insurance. But, Your Honor, I think that it's fair to say that the Minnesota court, if they were to get this case, would do the analysis that we've done and analogize, is this case similar to the ordinances and statutes which this doctrine has applied to in the past, or is it not? And we think the answer to that is inevitably that it's very, very dissimilar to the statutes and ordinances that other jurisdictions have applied the doctrine to. Finally, Your Honor, counsel said we're merely being asked to cover what we agreed to cover. Your Honor, our provisions of notice and cooperation were breached. That's what the district court said. So the answer to that is no, we're not. We acted within our rights under the policy. Your Honor, we would ask that the court reverse and remand with instructions to enter final judgment for Westchester. Thank you. Okay. Thank you, Mr. Jenkins. Thank you both for your arguments. It's kind of frustrating sometimes to try to guess what another court would want to do, and this is one of those. But thank you for your arguments. You've given us some guidance, and we'll do our best to get back to you. Okay. Thank you.